In the Interest of K.M.B. and N.B.

JUVENILE OFFICER, Respondent,

v.

K.B. (Natural Mother), Appellant.

No. WD 48922.

Missouri Court of Appeals,
Western District.

Sept. 13, 1994.

Paula E. Hosler, Kansas City, for appellant.

Sandra J. Wirtel, Guardian Ad Litem, Ellen D. Jervis, Kansas City, for respondent.

Before ELLIS, P.J., and BERREY and SMART, JJ.

BERREY, Judge.

K.B. appeals the termination of parental rights to her daughters K.M.B. and N.B. entered by the trial court on December 14, 1993. Appellant appeals from two separate judgments terminating her parental rights as to K.M.B. and N.B. Each judgment was apparently based on § 211.447.2 RSMo (Supp.1993).

The juvenile officer presented several witnesses. Peggy Hastings testified that she had been the original protective services worker assigned to the case. She testified K.B. had failed numerous times to meet goals set for her by the Division of Family Services (DFS). She had specifically failed to complete drug treatment programs, being a cocaine abuser. K.M.B. was born in the drug exposed environment. The drug use was a major barrier toward reuniting mother and daughters. K.B. also failed to purchase items for the baby, failed to keep counseling

appointments, failed to keep visitation appointments with K.M.B. and failed to complete specific mandated CPR training. She was in and out of four drug treatment programs, never completing them and usually being dropped from the program for non-attendance. Hastings testified that K.B. told her, "Please, get me into drug treatment because I need help."

Norma Kay Burton next testified that she was employed by the Division of Family Services as a case worker and had been assigned to work with K.B. in May, 1992. According to Burton, K.B. completed a fourteen day drug program at Trinity North. She then went into Renaissance West for a sixty to ninety day program. She completed seventy-five days of the program and was released. K.B. showed improvement but according to Burton was still in need of after care and counseling. K.B. was placed in Samuel Roberts South aftercare but would not cooperate and was dropped from the program. K.B. next went to Research Recovery again at Trinity North but stayed only seven days. A bed was found for K.B. at Women's Place, and she enrolled. A plan was developed for her to be with her children and work with them. However, " . . . she got in a fight with other clients and only stayed ten days."

Burton testified that K.B. was involved in seven different plans for help and assistance. Burton also stated that K.B. would appear uneasy when visiting her children. She tried to feed N.B. and N.B. would choke. Appellant would then hand N.B. back to the foster parent. Burton felt there was "never a bonding with [K] . . . at all." Burton also testified she felt N.B. was closer to her great grandmother than to K.B. Family visits were held at the great grandmother's home while K.B. was at Renaissance West. "The children knew that mom did drugs. They told me personally mom did drugs and sometimes they had to lie for mom doing drugs." From Renaissance West she went to Samuel Rodgers after care, then to Research Recovery for seven days, then to the Women's Place for ten days. Burton next took her to Imani House and arranged for her admittance. However, when a bed opened up "she didn't show up." This scenario occurred on two occasions.

K.B. did not meet the objectives of the written service agreement. She did not enroll or participate in the parenting classes. She did not attend the G.E.D. classes. She did not complete the Samuel Rodgers treatment plan because "she was released because she didn't show up and they had to give the spot to someone else." K.B. also failed to regularly contact Burton. Between May 25 and July 25, 1993, DFS and K.B. entered into another written service agreement with only two objectives, 1) be available to visit with her children at her grandmother's home on Tuesdays and 2) enter a treatment program at Imani House. K.B. did not complete either objective. K.B. offered no financial aid for the children while Burton was the case worker. Because of her inability or refusal to comply with her written agreements and the fact K.B. had not been stable long enough to provide the stability necessary to raise her children, the DFS recommended her parental rights be terminated.

Appellant alleges three points of trial court error, 1) finding appellant was chemically dependent because there was no medical evidence supporting such finding, 2) failure to receive evidence of events which occurred after DFS filed the petition to terminate parental rights, and 3) in terminating parental rights because the court failed to consider and make findings as required by § 211.447.-2(2) RSMo (Supp.1993).

In this court-tried case, we are guided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and by *In Interest of M.J.A.*, 826 S.W.2d 890, 897 (Mo.App.1992). The court in *M.J.A.* recited the requirements as set forth in *Murphy v. Carron*, that the appellate court would affirm a judgment unless it was against the weight of the evidence, or unless there was no evidence to support it, or it erroneously applied or declared the law. In addition, the facts should be reviewed in a light most favorable to the trial court's order. *In Interest of M.E.W.*, 729 S.W.2d 194 (Mo. banc 1987).

■ Appellant alleges DFS should have been required to supply medical expert testimony to support the contention that K.B. has

a drug problem. It was permissible for the trial court to conclude that K.B. "continues to habitually abuse cocaine" based upon the evidence presented. There can be no doubt from the extensive evidence that appellant had a chemical dependence which prevented her from providing necessary care, custody and control over her children. Further, she has not provided funds for their care and nourishment. She has not completed her G.E.D. She has not complied with visitation schedules. She has failed in efforts to conquer her dependency, having been the recipient of some thirteen different and sundry efforts directed toward drug rehabilitation. One child had witnessed the appellant using drugs, one child was born exposed to cocaine. Appellant admitted she had a drug problem. There was ample evidence on the whole record that K.B. had/has a serious drug problem. The appellant's complaint that DFS failed to offer medical evidence on this point is to say the least ludicrous especially in view of appellant's own testimony that she had a "drug problem." There is clear, cogent and convincing evidence on the record as a whole that K.B. is a drug abuser.

The trial court's findings as stated in its order is as follows:

> The Court finds by clear, cogent and convincing evidence that the child has been under the jurisdiction of the Juvenile Court for a period exceeding one year and conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parents in the near future; further, the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home; specifically the mother continues to habitually abuse cocaine and the evidence showed that she had failed at least 15 different drug treatment programs since the case originated and her continued failure to successfully address her cocaine use places the child at risk of abuse and neglect.

This order finds that appellant failed to rectify the conditions which lead the court to assume jurisdiction under § 211.447.2(3)(d).

"If any one ground for termination is supported by the evidence the termination may stand." *M.E.W.,* 729 S.W.2d at 197.

Point I is denied.

■ In Point II appellant contends the trial court erred in ruling that a written service agreement in effect from August 20, 1993, to November 20, 1993, was irrelevant and inadmissible evidence on the grounds that it was prepared after the filing of the petitions to terminate appellant's parental rights. Appellant points out that the agreement is devoid of any requirement that she attend a drug treatment or counseling program. Appellant argues because there was no such requirement, DFS did not consider her to be chemically dependent. We note that appellant failed to make an offer of proof as to her contention concerning the service agreement.

■ We give substantial deference to the trial court as to the admissibility of evidence. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991). We will not disturb its decision absent a showing of an abuse of discretion. *Id.* The general rule is that appellate courts will not review excluded evidence without a specific and definite offer of proof. *In Interest of L.J.M.S.,* 844 S.W.2d 86, 95 (Mo.App.1992).

The record does not allow us to determine how the excluded evidence would have helped appellant. Evidence was introduced of her numerous attempts to resolve her drug problem and her inability to properly care for her children because of her chemical dependence. Appellant, when asked, "Do you feel at this time that you have a drug problem?", responded, "Yes, I do." Appellant's argument that DFS did not consider her to have a drug problem simply because DFS did not include a drug treatment program in a subsequent service agreement, is contrary to the evidence.

Point II is denied.

■ In Point III, appellant alleges the trial court erred in terminating her parental rights in that the court failed to make any findings concerning appellant's mental condition or acts of abuse against the children as

required by § 211.447.2(2) RSMo (Cum.Supp. 1993). Appellant also alleges the trial court made contradictory findings as to her chemical dependence.

Section 211.447.2 provides the basis by which the state can terminate parental rights and states:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

\* \* \* \* \* \*

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, *the court shall consider and make findings on the following conditions or acts of the parent:*

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, *the court shall consider and make findings on the following:*

(a) The terms of a social service plan entered into. by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control. (emphasis added).

Under either subsection (2) or (3) of § 211.-447.2, there are four statutory factors relevant to the decision to terminate parental rights. The trial court is required to make findings of fact regarding the statutory factors. *In re Interest of E.K.,* 860 S.W.2d 797, 798 (Mo.App.1993).

The trial court's judgments state:

The Court makes no findings on subsections (a), (b) or (c) of subsections 211.447.-2*(2)* as there was no evidence to support the existence of the factors in the instant matter.

Pursuant to the factors specified under subsection *(3)* of 211.447 RSMo., the Court enters an order based on clear, cogent and convincing evidence that: (emphasis added)

\*　　\*　　\*　　\*　　\*　　\*

The trial court then goes on to list the following factors upon which its judgment is based:

1. The child has no emotional ties to her parents as the mother has not been consistent in visitation with the child and the father has had no contact with the child. Further, the child has not been in her parents' legal custody since April 14, 1992.

2. The parents have failed to contribute any financial support outside of $70.00 which the mother contributed on one occasion despite evidence that both parents were capable of employment and the mother had worked sporadically.

3. No additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parents within an ascertainable period of time. The mother has failed to cooperate with the written service agreements to bring about reunification with the child and has failed to cooperate with the extensive drug treatment services offerred (sic) to her by the Division of Family Services since 1992.

4. The mother's failure to adequately participate in services demonstrates a disinterest in and lack of commitment to her child.

The factors discussed by the trial court do not make findings as to the four requirements of subsection (3). Respondent suggests a clerical error was made in the first paragraph of the order and that the judgments should have cited subsection (3) instead of (2). We are unable to determine, with certainty, if there was a clerical error and where it occurred. Due to the confusion and deficiency of the judgment in its findings, we remand the case to the trial court for it to enter findings consistent with the requirements of § 211.447.2.

All concur.