973 S.W.2d 165 (1998)
In the Matter of M.M. and O.M.
Brian ABBOTT, Deputy Juvenile Officer, Respondent,
v.
Ermajean WHITLEY, Appellant,
No. 21839.
Missouri Court of Appeals, Southern District, Division Two.
July 30, 1998.
*166 James A. DeReign, DeReign and DeReign, Caruthersville, for appellant.
W. Edward Reeves, Ward & Reeves, Caruthersville, for respondent.
GARRISON, Presiding Judge.
Ermajean Whitley ("Mother") appeals from the juvenile court's judgment terminating her parental rights with respect to her daughter, M.M., and her son, O.M. We affirm.
M.M., born August 10, 1985, and O.M., born August 16, 1986, came under the care and custody of the Division of Family Services (the "DFS") on May 7, 1987, when the juvenile court ordered their emergency removal from Mother's home. The incident that precipitated their removal occurred shortly before that time, when Mother went to Michigan, leaving the children with an elderly man who was neither able nor willing to take care of them for an extended period. Mother apparently failed to make arrangements for the children's food, clothing, and medical needs, and they developed pneumonia while she was gone. On June 16, 1987, the juvenile court found that the children had been neglected and decreed that they become wards of the court.
From May 1987 to June 1988, M.M. and O.M. remained in the custody of the DFS, although Mother visited them sporadically. During this time, Mother was briefly incarcerated. On June 28, 1988, Mother, together with the children, entered the Tri-County Family Treatment Center, where they remained *167 until sometime in July 1989. On July 25, 1989, M.M. and O.M. were again removed from Mother's custody. The children were in DFS custody for the next seventeen months. During that time, Mother had scheduled visits with the children, but missed several of them. On December 5, 1990, the children were placed with their aunt, B.D.
Following the children's placement with their aunt, Mother's contact with them diminished significantly. In February 1991, Mother contacted the DFS and requested the children's address. She wrote them a letter in April 1991, telephoned them at least once in May or June 1991, and visited them on July 4, 1991. On October 2, 1991, however, Mother signed a document consenting to the termination of her parental rights with respect to M.M. and O.M. In February 1992, Mother told DFS case worker Tammy Moss that she was tired of hearing about the children, and "wanted to just run away from it all."
Mother was arrested in June 1992, and was later convicted of second degree robbery and sent to prison for approximately two years. The DFS closed its file on Mother on June 15, 1992, because of her incarceration, and because she had failed to take advantage of its services or of the opportunities to visit her children. While in prison, Mother sent the children a birthday card and a Christmas card, and wrote them several letters. In 1993, she sent them Christmas presents and a letter. She also made three collect calls to the children.
Mother was paroled in 1994, and made few attempts to contact M.M. and O.M. between that time and the termination hearing, which occurred on June 25, 1997 and July 16, 1997. Mother testified that she wrote and called the children several times, and that B.D. rebuffed her attempts at contact. She claimed that on one occasion, she sent M.M. and O.M. each a birthday card with $50 inside, and that B.D. tore them up. Ms. Moss testified that Mother wrote the children one letter about five months before the hearing, and saw them at a family funeral in May 1995.
Mother testified that the children barely knew her when they saw her at the funeral. Ms. Moss testified that the children have very little emotional attachment to Mother, and actually call B.D. their mother, although they know that Mother is their biological mother. Furthermore, Mother has not supported the children financially since they came into DFS custody in 1987. At the termination hearing, Mother testified that she was receiving public assistance, and had not held a job for more than thirty days in the previous ten years. Ms. Moss opined that terminating Mother's parental rights would be in the children's best interests. M.M. and O.M.'s guardian ad litem agreed.
The juvenile court terminated Mother's parental rights pursuant to § 211.447.2,[1] finding *168 that such action was in the children's best interests. It noted that since the children entered into DFS custody, "[Mother] has not corrected the conditions which led to the children's removal [from her home], and she will not likely be able to do so within the foreseeable future." It further found that "[Mother's] history of unemployment, inadequate housing, inattention to her children and incarceration, together with her failure to consistently cooperate with the [DFS] to rectify these problems, make it unlikely that [Mother] could provide a stable and secure home at any time in the near future." The juvenile court relied on several statutory bases for terminating Mother's parental rights, including abandonment, § 211.447.2(1); adjudicated neglect or abuse, § 211.447.2(2); and the existence of juvenile court jurisdiction over the children for one year, coupled with the continued presence of conditions that would be potentially harmful to the children if they were returned to Mother's care, § 211.447.2(3). Specifically, the trial court found that § 211.447.2(1)(b), (2)(d), (3)(a), and (3)(b) were applicable to the instant case.
The juvenile court may terminate the rights of a parent to a child if it finds that termination is in the child's best interests, and when clear, cogent, and convincing evidence shows that one or more grounds for termination exist. § 211.447.2; In the Interest of M.H., 859 S.W.2d 888, 892 (Mo.App. S.D.1993). The existence of even one statutory ground for termination is sufficient if termination is in the child's best interests. In Interest of E.B.S., 876 S.W.2d 8, 10 (Mo. App. S.D.1994). This court will affirm the juvenile court's judgment unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo.banc 1976); In the Interest of T.M.E., 874 S.W.2d 552, 559 (Mo. App. S.D.1994). Mindful that the juvenile court has a superior opportunity to assess the credibility of witnesses, we recognize that it is free to believe or disbelieve all, part, or none of the testimony of any witness. In the Interest of R.L.N., 886 S.W.2d 15, 19 (Mo. App. W.D.1994). When conflicting evidence has been received by the trial court, appellate courts shall review the facts in the light most favorable to the trial court's order. In the Interest of M.E.W., 729 S.W.2d 194, 196 (Mo.banc 1987).
Mother raises three points on appeal. In her first, she argues that the juvenile court failed to make the factual findings required to terminate her parental *169 rights under § 211.447.2. She observes that subdivision (1) of § 211.447.2 contains two subparagraphs, (a) and (b), and that subdivisions (2) and (3) each contain four subparagraphs, (a) through (d). She then contends that the juvenile court's findings of fact were insufficient to support the termination of her parental rights under § 211.447.2, because it did not make a specific finding as to the applicability of each subparagraph of § 211.447.2(1), (2), and (3).
Mother's argument is sound with respect to § 211.447.2(2) and (3). The language of § 211.447.2(2) provides, "In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent [enumerated in subparagraphs (a) through (d)] ..." Missouri courts have repeatedly held that this language requires the juvenile court to consider and to make a specific finding of fact regarding each of subparagraphs (a) through (d) when terminating a parent's rights under § 211.447.2(2). See In the Interest of D.T.B., 944 S.W.2d 321, 323 (Mo.App. W.D.1997); In the Interest of K.D.C.R.C.B-T., 928 S.W.2d 905, 908-09 (Mo. App. E.D.1996); In the Interest of S.C., 914 S.W.2d 408, 411 (Mo.App. W.D.1996). Section 211.447.2(3) similarly dictates that "[i]n determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following [factors listed in subparagraphs (a) through (d)] ..." Thus, when terminating parental rights pursuant to § 211.447.2(3), the juvenile court must consider and make findings as to each subparagraph of that subdivision. In the Interest of H.R.R., 945 S.W.2d 85, 89 (Mo.App. W.D.1997); In the Interest of K.M.B., 883 S.W.2d 123, 126 (Mo.App. W.D. 1994); In the Interest of J.M., 789 S.W.2d 818, 822 (Mo.App. W.D.1990).
In the instant case, the juvenile court made specific findings regarding subparagraph (d) of § 211.447.2(2), and subparagraphs (a) and (b) of § 211.447.2(3), but failed even to mention the remaining subparagraphs of each subdivision. Mother is correct in her contention that the juvenile court erred in omitting these necessary findings, and this error would require us to remand this matter if the juvenile court had based its judgment solely on § 211.447.2(2) and (3). That, however, is not the case here, because the juvenile court also grounded its termination of Mother's parental rights on § 211.447.2(1)(b).
Mother attempts, unsuccessfully, to extend her argument under § 211.447.2(2) and (3) to § 211.447.2(1). While she relies on several cases in support of her assertion, all of them refer to either § 211.447.2(2) or (3). She cites no case that either expressly or impliedly holds that the juvenile court must make a specific finding regarding each subparagraph of § 211.447.2(1), and our research has revealed none. We also note that subdivision (1) of § 211.447.2, unlike subdivisions (2) and (3), contains no mandatory language directing the juvenile court to make specific findings with respect to each of its subparagraphs. Mother has not convinced us that the juvenile court made insufficient findings to support the part of its judgment based on § 211.447.2(1)(b). Point one is denied.
In her second point, Mother argues that the juvenile court erred in terminating her parental rights because "the original petition filed May 6, 1987 was void as a matter of law to confer jurisdiction in that it failed to set forth facts (place and manner) or sufficiently advise [Mother] at the time filed ..." The "original petition" to which Mother refers is not the petition to terminate her parental rights, but rather the petition that led to the juvenile court's adjudicating them to have been neglected and declaring them wards of the court. Indeed, she does not attack the sufficiency of the termination petition at all. As we understand Mother's argument, she contends that the "original petition" was insufficient to vest the juvenile court with subject matter jurisdiction, and that this alleged defect has so tainted subsequent proceedings that the juvenile court's jurisdiction to terminate her parental rights is also fundamentally defective. We need not consider this point further, however, because at the oral argument of this appeal, Mother's counsel candidly admitted that it was not well taken under these facts, and abandoned it. This point is denied.
*170 Mother's third, and final, point avers that the juvenile court erred in terminating her parental rights because the DFS prevented her from rectifying the conditions that caused her to lose custody of M.M. and O.M. In particular, she focuses on to the action of the DFS in closing her file when she went to prison in 1992.
The juvenile court found that "efforts by the [DFS] to address the problems presented in this case have not been successful, and that [the] DFS has used reasonable, diligent and continuing efforts to aid the parents in rectifying the conditions which led to the removal of the children." It then made a more specific finding:
That the terms of social service plans have not been met by [Mother] who failed to follow through with agency recommendations and who did not utilize and did refuse services offered; that [Mother] did not cooperate with the [DFS]; and that the [DFS] has attempted to provide services of various kinds over a span of many years, and that [Mother] has not taken advantage of the services offered.
Finally, the juvenile court found that "the [DFS] closed their services case because [Mother] did not take advantage of either services offered or the opportunities to visit her children."
Mother attacks none of these findings. She merely decries the failure of the DFS to continue its fruitless efforts to reunite her with the children after her imprisonment, despite her evident disinterest in them after her release. She does not explain how the DFS kept her from contacting the children, nor does she demonstrate that she made any more than a token effort to do so. Moreover, although the juvenile court should consider DFS efforts to reunite the parent and child, "even the absence of treatment or services is no defense to a termination proceeding." In the Interest of J.A.A., 829 S.W.2d 79, 82 (Mo.App. E.D.1992); In the Interest of J.M., 815 S.W.2d 97, 102 (Mo.App. W.D.1991). Mother's third point is denied.
Although Mother has convinced us that the juvenile court made insufficient findings to support the termination of her parental rights under § 211.447.2(2) and (3), she has not persuaded us that its findings of facts and conclusions of law with respect to § 211.447.2(1) are erroneous, nor has she demonstrated that the termination of her parental rights is not in M.M. and O.M.'s best interests. Because the existence of even one statutory ground is sufficient if termination is in the child's best interests, E.B.S., 876 S.W.2d at 10, we affirm the judgment of the juvenile court.
BARNEY and CROW, JJ., concur.
NOTES
[1] All statutory references are to RSMo 1994, unless otherwise indicated. Section 211.447.2 provides:

The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent, and convincing evidence that one or more of the following grounds for termination exist:
(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer for a child over one year of age or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition:
(a) The parent has left the child under such circumstances that the identity of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child; or
(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with child, although able to do so;
(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody, and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.