**In the Interest of C.N.W. and K.S.W., minor children.**

**C.W.B., Appellant,**

**v.**

**Susan LaFata and Missouri Division of Family Services, Respondents.**

**No. ED 75741.**

Missouri Court of Appeals, Eastern District, Division Five.

July 25, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 24, 2000.

Application for Transfer Denied Oct. 3, 2000.

---

Paul Graham, Jefferson City, for appellant.

Cynthia Harcourt-Hearring, Clayton, for Juvenile Officer.

Bruce Antrim, Dept. of Social Services, St. Louis, for Mo. Div. of Family Services.

LAWRENCE G. CRAHAN, Judge.

C.W.B. ("Mother") appeals the judgments of the Circuit Court of St. Louis County terminating her parental rights to her minor daughters, C.N.W. and K.S.W., and dismissing her Rule 74.06 motion to vacate the judgment for lack of jurisdiction and failure to state a cognizable claim. The cases were consolidated for purposes of appeal. We affirm.

This case involves two minor children born to Mother: C.N.W., born January 15, 1985, and K.S.W., born July 19, 1986. The children came under the jurisdiction of the court on July 24, 1990, when it adjudicated them as having been abused while in Mother's custody, and have remained in the court's jurisdiction since that time. From 1990 to 1994, legal custody of the children was given to the Missouri Division of Family Services ("DFS"). Although physical custody of the children was given to Mother, the children lived with their maternal grandparents during much of this time due to Mother's recurrent drug abuse problem requiring placement in drug treatment centers. In 1994, the grandparents contacted DFS and requested that both children be placed in foster care because they were no longer able to care for them. DFS placed both children in the home of Teresa Anderson ("foster mother") where they have remained until the present time.[1]

On October 28, 1998, the juvenile officer filed petitions to terminate Mother's parental rights with respect to each child.[2] A consolidated hearing on the petitions was held three months later, at which time Mother was present and represented by appointed counsel.

Judy Rayborn ("Rayborn"), an employee of the Department of Mental Health, Division of Mental Retardation, testified on behalf of the juvenile officer. She stated that Mother had been diagnosed with mild mental retardation, but compared with other mentally retarded individuals, was very high functioning. Rayborn had worked with Mother for the two years preceding the termination hearing on budgeting and housing issues and had noticed an improvement in her ability to care for herself since March or April of 1998. Rayborn testified that Mother had recently obtained housing on her own and had met her housing and budgeting goals for 1998.

Rayborn testified that Mother received $494.00 per month from social security and additional money from other employment sources. Rayborn testified that she paid Mother's utility bills out of the social security money, and then sent Mother the remainder to use at her discretion for groceries and other expenses. Rayborn stated that although Mother had requested occasional money for Christmas and birthday presents for the children, she did not request that any money be specifically budgeted for their support. Further, Rayborn could not verify that Mother had sent any money to the children to help with their support out of her expense allowance. Rayborn testified that although she had discussed with Mother the possibility of obtaining housing large enough to accommodate the children and had offered to help in that regard, Mother had not budgeted any money or taken any action to acquire such housing as of the date of the termination hearing.

Marilyn Thompson ("Thompson"), a psychotherapist and licensed clinical social worker, testified that both children had been referred to her by DFS for counseling in August of 1998. She stated that her therapy sessions with the children and foster mother focused on self-esteem and

---

1. Foster mother has filed a petition to adopt both children pending the outcome of this appeal concerning the termination of Mother's parental rights.

2. The juvenile officer also filed a petition to terminate the parental rights of the natural father of K.S.W., which the court granted. The natural father does not appeal the termination of his rights. The natural father of C.N.W. is deceased.

adoption issues. She was aware that both foster mother and the children's cousin, Charlotte Lawton ("Lawton"), wished to adopt the children if Mother's parental rights were terminated.

Thompson testified that although C.N.W. felt a sense of loyalty to her biological family, she did not want to live with Mother because she was concerned whether Mother "could provide safety" for her. Thompson testified that C.N.W. was aware that Lawton wanted to adopt her and that she was very angry about this. C.N.W. was afraid that if she went to live with Lawton, Lawton would give her back to Mother. Thompson testified that K.S.W. also expressed concern that she might be abused again if she were to live with Mother. Thompson stated that both children loved and had developed a strong bond with their foster family and wanted to be adopted by foster mother.

Thompson testified that although the children were comfortable around Mother and desired to maintain some contact with her, neither had shown a positive emotional bond with her. She stated that the children were "on an emotional roller coaster" and had been exhibiting signs of depression due to fear of leaving foster mother. Thompson opined that it was in the best interests of the children that foster mother be allowed to adopt them.

Foster mother also testified at the hearing. She testified that both children had lived with her for the past four years and that she desired to adopt them. She testified that during the last four years, Mother only called two or three times to talk to the children. Foster mother stated that she did not restrict the children from calling Mother, but that they had only desired to call her one time.

Willa Hubbard ("Hubbard"), a DFS caseworker, testified that she had been assigned to the children's case since August of 1995. She testified that the children were originally referred to DFS pursuant to two hotline reports in May of 1990 concerning bruising on K.S.W.'s face and neck, and belt buckle marks on her back, inflicted by a babysitter frequently used by Mother and known only as "Pookie." She disclosed that there had also been a hotline report of abuse occurring in 1987, but that the perpetrator at that time was unknown. Hubbard testified that both children had been in the jurisdiction of the juvenile court and custody of DFS continuously since 1990, and in foster care since 1994, due to Mother's severe drug abuse problems.

Hubbard detailed for the court Mother's attendance and involvement in drug treatment programs. From 1990 to early 1995, Mother entered and failed drug treatment approximately fourteen times. Between May of 1995 and the date of the termination hearing, Mother had participated in six or seven drug treatment programs. Hubbard acknowledged that in the five months preceding the hearing, Mother had shown some improvement, but opined that this was characteristic of Mother's past history. She stated that Mother consistently showed a pattern of improvement before foster care review hearings followed by a relapse into drug use. Although she stated that Mother appeared to be doing well in her current aftercare program, Hubbard was unable to verify that Mother had been drug free for the past six months because her current program did not require drug screening tests.

Hubbard testified that Mother and DFS had entered into written service agreements each year, beginning in 1990, to assist Mother with the reunification of her children. Hubbard stated that she and Mother went over every aspect of the service agreements and although Mother understood what was expected of her, she consistently failed to adhere to the requirements. Specifically, Mother failed to remain drug free, did not comply with the housing requirements prior to 1998, and failed to keep in contact with DFS on several occasions. Mother also failed to visit her children on a regular basis as

required in the agreements. Hubbard testified that Mother did not have a documented visit with her children between December of 1996 and September of 1997. She also failed to call or visit her children between February and June of 1998. Further, Mother had only visited the children five times between August of 1998 and the date of the termination hearing in January of 1999. Although Mother claimed to have visited the children during some of these periods at the grandparents' home, Hubbard had no documentation of such visits and was unable to verify Mother's assertions to the court.

Hubbard testified that Mother had provided no financial support for the children since they had been placed in foster care, although she had periodically provided clothing, necessities, and birthday and Christmas presents. Hubbard stated that the children seemed to enjoy seeing their mother, but that there was no parent/child relationship between them. Mother also failed to demonstrate any control or discipline over the children and the emotional ties between them were "more of a friend relationship than mother and children." Hubbard did not think that Mother would be able to commit to the children in the future and opined that they might be at risk for physical and mental harm because she could not make good decisions for them due to her mental limitations.

Finally, Hubbard testified that DFS had exhausted all services that would assist Mother with the reunification of her children, and that continued service by DFS would not allow for reunification within a reasonable period. She opined that even with Mother's improvement during the five months preceding the hearing, Mother would not be capable of adequately caring for the children, although she showed signs of now being able to take care of herself. Hubbard testified that because the children needed a stable home and a person on whom they could rely to care for them, it was in the best interests of the children that Mother's parental rights be terminated.

Mother testified on her own behalf at the hearing. She acknowledged that DFS became involved with the children in 1990 because they had been abused while in her custody. She also admitted that she had a history of drug abuse problems, and had been in and out of treatment centers since 1990. Although she claimed to have been drug free for the eleven months preceding the termination hearing, she acknowledged that she was unable to prove this because her aftercare program did not require drug screenings.

Mother testified that she did not remember failing to visit her children for extended periods of time as testified to by Hubbard. She stated that she sometimes saw the children when they were at the grandparents' home or called them on the phone, and explained that she was trying to obtain a car so that she could visit the children more frequently. She testified that although she sometimes gave money to her parents and Lawton for her children, she seldom gave money directly to the children because she believed the children would not get to keep it. While Mother at one point testified that she was in the process of trying to find a bigger place to live, she subsequently admitted that she had not taken any steps to do so prior to the termination hearing. Finally, upon direct questioning from her attorney, Mother testified that she understood that the purpose of the hearing was to determine whether her legal rights would be terminated with respect to both children, and that she "would feel bad, really bad" if that were to happen.

On January 29, 1999, the trial court issued its judgment finding sufficient grounds existed to terminate Mother's parental rights with respect to both children, and that termination was in the best interests of the children. Mother's trial counsel filed a timely notice of appeal to this Court, but thereafter failed to pursue the appeal. On June 3, 1999, Mother's appeal

was dismissed for failure to comply with Supreme Court rules. However, upon motion by new counsel retained by Mother, the mandate was recalled and her appeal reinstated by this Court on October 18, 1999.

Thereafter, on November 10, 1999, Mother's new counsel filed a motion with the trial court pursuant to Rule 74.06 asserting Mother's previous trial counsel had rendered ineffective assistance and requesting the trial court vacate or set aside its order terminating Mother's parental rights.[3] The trial court dismissed Mother's motion on December 13, 1999, finding it lacked jurisdiction to consider the motion because an appeal was pending before this Court and further, because the motion failed to state a cognizable claim under Rule 74.06. Mother timely appealed the order of dismissal and this Court consolidated all of the cases for purposes of appeal.

On appeal, Mother argues the trial court erred in dismissing her motion to vacate or set aside the judgment terminating her parental rights brought pursuant to Rule 74.06. She contends an allegation of ineffective assistance of counsel in a termination of parental rights case may be properly raised after the entry of a final judgment by a Rule 74.06 motion; thus, the trial court erred in dismissing the motion for failure to state a cognizable claim. We disagree.

■ Generally, a motion to set aside a judgment under Rule 74.06 is governed by the sound discretion of the trial court and we will only interfere with that discretion if the record convincingly demonstrates abuse. *Gering v. Walcott*, 975 S.W.2d 496, 498 (Mo.App.1998). In the present case, however, the precise issue is whether the trial court correctly applied the law in

denying Mother's motion to set aside the judgment based on a determination that an allegation of ineffective assistance of counsel fails to state a cognizable claim for relief under Rule 74.06. We will affirm an order denying a motion to set aside a judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *State v. Goodrich*, 12 S.W.3d 770, 772 (Mo.App.2000); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We hold the trial court correctly applied the law in dismissing Mother's motion to vacate or set aside the judgment.

■ In the present case, the trial court entered its judgment terminating Mother's parental rights on January 29, 1999. Mother filed her motion to vacate or set aside the judgment with the trial court on November 10, 1999, alleging she was entitled to relief under Rule 74.06 because her trial counsel had rendered ineffective assistance of counsel. Rule 74.06, however, allows a party to seek relief from a final judgment for the following reasons: mistake, inadvertence, surprise, or excusable neglect; fraud, misrepresentation or other misconduct; when the judgment is irregular or void; when the judgment has been satisfied, released, discharged, or a prior judgment upon which it is based has been reversed; or when it is no longer equitable that the judgment remain in force. *Gering*, 975 S.W.2d at 498. By its terms, this rule permits a court to set aside a judgment only for the specific reasons set out in the rule, and does not indicate that the courts may expand the reasons for setting aside a judgment beyond those set out in the rule itself. *Goodrich*, 12 S.W.3d at 775.

---

**3.** Mother included a copy of a letter previously sent to the trial court dated June 29, 1999, in which she asserted her counsel did not effectively perform his duties because he failed to meet with her more than once before the hearing, failed to call her mother and cousin as witnesses at the hearing, and tried to persuade her to drop her appeal. A copy of this letter, along with an affidavit and other supporting documents, was also attached to Mother's motion to reinstate her appeal with this Court.

Mother's motion failed to set forth any allegations falling within the specific constraints of Rule 74.06. Ineffective assistance of counsel is not one of the specified reasons for setting aside a judgment under the rule. Thus, we find the trial court did not err in dismissing Mother's motion for failure to state a claim for which relief could be granted.

Further, we note that Mother has failed to direct us to any authority in Missouri which requires a trial judge to personally question a parent about the effectiveness of his or her counsel either at the conclusion of a termination hearing or at an additional hearing on that issue. *See In the Interest of F.M.*, 979 S.W.2d 944, 947 (Mo.App.1998). Termination of parental rights proceedings are statutory creatures and as such, must be conducted in strict accordance with the provisions set forth in Chapter 211 of the Revised Statutes of Missouri, and Rules 110 through 128 of the Missouri Court Rules. *Id.* These provisions are civil rather than criminal in nature, and do not provide for a separate post-termination hearing to ascertain whether a parent has received effective assistance of counsel. *Id.* Rather, in Missouri, the test is whether the attorney was effective in providing his client with a meaningful hearing based on the record. *In Interest of J.C., Jr.*, 781 S.W.2d 226, 228 (Mo.App., 1989); *In Interest of J.M.B.*, 939 S.W.2d 53, 56 (Mo.App. 1997).

In the present case, Mother did not raise the issue of the ineffective assistance of counsel as a point on direct appeal, and the issue is deemed waived. Furthermore, Mother failed to allege how she was prejudiced by counsel's failure to meet with her on more than one occasion or to call her mother or cousin as a witness. Conclusory statements combined with the failure to allege prejudice renders this Court unable to find Mother's counsel ineffective. *See In the Interest of D.S.G.*, 947 S.W.2d 516, 519 (Mo.App.1997). Despite these shortcomings, we recognize

that in cases involving custody of a child, the most important issue is the best interest of the child. *In the Interest of A.H. and M.H.*, 963 S.W.2d 374, 379 (Mo.App. 1998). Accordingly, we have reviewed *ex gratia* the entire record of the termination proceeding and find Mother did not receive ineffective assistance of counsel. Point denied.

Mother next contends the trial court's findings of fact were insufficient to support the termination of her parental rights because they were not supported by clear, cogent and convincing evidence in the record. We disagree.

The trial court's order will be affirmed unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *In the Interest of T.M.E.*, 874 S.W.2d 552, 559 (Mo.App.1994). The facts and the reasonable inferences therefrom are viewed in the light most favorable to the judgment, and great deference is given to the trial court with respect to findings of fact and credibility of witnesses. *In Interest of K.O.*, 933 S.W.2d 930, 934 (Mo.App.1996). Further, in reviewing a court-tried case to determine whether the court's judgment is grounded upon sufficient evidence, this court must act with caution and will reverse only upon a firm belief that the judgment is wrong. *In Interest of J.L.M.*, 848 S.W.2d 502, 504 (Mo.App.1993).

The trial court may terminate parental rights where one or more of the statutory grounds set forth in section 211.447 is found by clear, cogent and convincing evidence and where termination is in the best interest of the child. *In Interest of L.*, 888 S.W.2d 337, 339 (Mo.App. 1994). The existence of even one statutory ground for termination is sufficient if termination is in the child's best interests. *In the Matter of M.M.*, 973 S.W.2d 165, 168 (Mo.App.1998).

In the present case, the trial court determined that statutory grounds for termination existed pursuant to sections 211.447.2(1), 211.447.4(2) and 211.447.4(3) RSMo Supp.1998 [4], and further found that termination was in the best interests of the children. We hold the court's findings were based upon clear, cogent and convincing evidence in the record.

Section 211.447.2(1) provides that grounds for termination exist when "information available to the juvenile officer or the division establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months." At the hearing, both Hubbard and foster mother testified that the children had continuously been in foster care since 1995. Mother admitted this fact as well. This undisputed evidence supports the court's determination that grounds for termination existed under section 211.447.2(1).

Although the existence of even one statutory ground is sufficient to support the trial court's determination, the court found that sections 211.447.4(2) and (3) applied to the present case as well. Section 211.447.4(2) permits the rights of a parent to be terminated when a child has been abused or neglected. Mother admitted at the termination hearing that DFS became involved with her children in 1990 "because of the abuse that was going on with my baby girl [K.S.W] as well as [C.N.W.] at that time." Hubbard also testified that the juvenile court adjudicated the children as having been abused based upon the admission of Mother in orders entered in 1990. This testimony unequivocally supports the court's determination.

The court's additional findings required under subsections (a) through (d) of 211.447.4(2) were also supported by clear, cogent and convincing evidence in the record.[5] Mother's argument that the court's

finding under subsection (b), that she suffers from a chemical dependency that prevents her from "consistently providing the necessary care, custody and control" of the children, was against the weight of the evidence is without merit. Although evidence was produced that demonstrated recent improvement in the life of Mother, substantial evidence was also introduced showing that Mother had been in and out of drug treatment programs at least fourteen times since 1990, and that she had a history of relapsing into drug use following a period of improvement. Mother acknowledged this fact to the court and admitted that she was unable to prove that she had been drug free for several months preceding the termination hearing because her aftercare program did not require drug screening.

This court defers to the trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence. *In Interest of W.S.M.*, 845 S.W.2d 147, 151 (Mo.App.1993). The presence of evidence in the record that might support another conclusion does not necessarily establish the trial court's decision is against the weight of the evidence. *In Interest of J.N.C.*, 913 S.W.2d 376, 379 (Mo.App.1996). The facts viewed in the light most favorable to the judgment support the trial court's determination that Mother continued to suffer from a chemical dependency that prevented her from providing the necessary care, custody and control of the children.

The record likewise supports the trial court's finding pursuant to subsection (c) regarding a severe act or recurrent acts of physical abuse occurring against the children. Hubbard testified that DFS received two hotline calls in 1990 regarding abuse of the children, and Mother admitted this in her testimony at the hearing as well. The evidence also unequivocally es-

---

4. All statutory references are to RSMo Supp. 1998, unless otherwise indicated.

5. Mother does not take issue with the court's finding under subsection (a) that Mother's mental condition, in and of itself, did not render her unable to care for her children.

tablished that the children were found to have been abused by an order of the juvenile court in 1990, following an admission by Mother as to the truth of the allegations contained in the juvenile officer's petition. Thus, the court's finding under this subsection was also supported by clear, cogent and convincing evidence in the record.

▉ Finally, the court's findings under subsection (d) regarding Mother's failure to provide for the children's needs and care are also supported by the record. Rayborn testified that Mother was given money every two weeks to use at her discretion, and that no money had been budgeted or sent to the children for their support. She further testified that although she had offered to help Mother obtain housing large enough to accommodate the children, no action had been taken toward obtaining such housing. Similarly, Hubbard testified that she had no indication that Mother had ever made any financial contributions toward the care of the children. Although Mother had provided toys and clothing on the children's birthdays and for Christmas, such items were provided only periodically and were insufficient to sustain the children on a daily basis. Further, even though specifically questioned on the issue, Mother was unable to describe the actual amounts of money allegedly given by her to the children or that any money provided to her mother or cousin actually went to the care of the children. Thus, the trial court was entitled to weigh the testimony and conclude that Mother failed to provide the children with adequate food, clothing or shelter necessary for their health and development, although financially able to do so.

As stated previously, the existence of even one statutory ground for termination is sufficient if termination is in the child's best interests. *In the Matter of M.M.*, 973 S.W.2d 165, 168 (Mo.App.1998). As we have determined that the court's findings pursuant to section 211.447.4(2) were supported by clear, cogent and convincing evidence in the record, we need not consider Mother's point regarding the findings under section 211.447.4(3).

▉ We also find there was sufficient evidence to support the court's findings with regard to the factors listed in section 211.447.6. The facts previously set forth in this opinion regarding inconsistent visitation and telephone calls, lack of financial support, the children's length of time in foster care, and Mother's failure to comply with her service agreements and drug treatment plans in a timely fashion all support the court's determination that termination of Mother's parental rights was in the best interests of the children. The paramount consideration in a termination case is a determination of the best interest of the child. *In the Interest of M.E.W.*, 729 S.W.2d 194, 195 (Mo. banc 1987). Termination has been held to be in the best interests of the child where the child has spent the better portion of the child's life in the custody of others, where the mother has failed to improve her conduct to regain custody of her child, where the child has shown little emotional ties to the mother, and where adoption would be more difficult the longer the child remains in temporary foster care. *In Interest of S.H.*, 915 S.W.2d 399, 403 (Mo.App.1996). We find under the facts of the present case the court did not err in terminating Mother's parental rights and in determining that termination was in the best interest of the children.

The judgment of the trial court is affirmed.

MARY RHODES RUSSELL, C.J., concurs.

CHARLES B. BLACKMAR, Sr. J., concurs in result only in separate opinion.

CHARLES B. BLACKMAR, Sr. Judge, concurring in result.

The opinion of the court states as follows, " ... we have reviewed the entire

record of the termination proceeding and find Mother did not receive ineffective assistance of counsel."

I wholly agree with this finding and consequently see no need to discuss the question whether a claim of ineffective assistance of counsel may be pursued by means of a motion under Rule 74.06. The phrase, " ... when it is no longer equitable that the judgment remain in force ..." seems to give the motion court broad discretion. I am reluctant to. see the language of the rule narrowed by a holding which is not necessary to the disposition of this particular case.

I concur in the balance of the opinion and in the judgment of affirmance.