90 S.W.3d 232 (2002)
In the Interest of A.P.S., a child under seventeen years of age.
L.M.S., Appellant,
v.
State of Missouri, Greene County Juvenile Office, Respondent.
No. 24946.
Missouri Court of Appeals, Southern District, Division Two.
November 27, 2002.
*233 Christopher A. Hazelrigg, Hazelrigg, Roberts & Easley, P.C., Springfield, for appellant.
Bill Prince, Springfield, for respondent.
NANCY STEFFEN RAHMEYER, Chief Judge.
L.M.S. ("Father"), the alleged biological father of A.P.S., appeals from the termination of his parental rights. Father contends there was insufficient evidence for the juvenile court's judgment terminating his parental rights to A.P.S. in that he claims his incarceration was the sole ground for termination. We affirm the juvenile court's judgment.
A.P.S. was born November 2, 1990. Father had been incarcerated in 1983 for robbery; he was incarcerated again in 1991 for 26 months for receiving stolen property. After his release in 1994, he committed a burglary and was sentenced to six years imprisonment as a prior and persistent offender. He also pled guilty to *234 failure to appear and was sentenced to one-year imprisonment. He was then released on both offenses in 1998, but subsequently committed the offenses of tampering in the first degree, possession of a controlled substance, and two counts of forgery and has been incarcerated on these offenses since 1999. In summary, Father has been available to parent A.P.S. for only eight months of the child's life.
A.P.S. was placed in the temporary legal custody of the Missouri Division of Family Services ("DFS") on November 17, 1999 pursuant to an order of the Circuit Court of Greene County, Missouri Juvenile Division in Case No. 199JU0567 after his mother was arrested for child endangerment and inhaling solvents. Father was provided with a Notice to Incarcerated Parent in October 2000. On April 3, 2001, Greene County Deputy Juvenile Officer Julie Chapman filed a petition to terminate the parental rights of A.P.S.'s mother, Father and A.P.S.'s unknown biological father. A hearing was held on September 25, 2001 and the juvenile court terminated the parental rights of all the parents in a judgment entered April 15, 2002. Father now appeals.[1]
The juvenile court's judgment will be affirmed "unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." In the Matter of M.M., 973 S.W.2d 165, 168 (Mo.App. S.D.1998). "Substantial evidence" means "clear, cogent, and convincing evidence." In re Marriage of A.S.A., 931 S.W.2d 218, 222 (Mo.App. S.D.1996). In order to terminate parental rights, clear and convincing evidence indicating that one or more grounds for termination exist under § 211.447[2] must be found. In re Interest of J.L.M., 64 S.W.3d 923, 924 (Mo.App. S.D.2002). The juvenile court is in a superior position to determine the credibility of witnesses and can believe all, part, or none of a witness's testimony. In re the Interest of S.L.J., 3 S.W.3d 902, 907 (Mo.App. S.D.1999). Where conflicting or contradictory evidence was present at the hearing, we view the facts in the light most favorable to the juvenile court's judgment. Id. In terminating parental rights the primary concern is the best interests of the child, and thus, the existence of even one statutory ground for termination is sufficient if it is in the best interests of the child. Id. Incarceration, in and of itself, may not be grounds for termination of parental rights. § 211.447.6(6); In the Interest of R_L_K 957 S.W.2d 778, 782 (Mo.App. S.D.1997).
Father argues that his incarceration was the sole ground for termination of his parental rights, which is prohibited by § 211.447.6(6). An examination of the record indicates otherwise. According to the judgment, the juvenile court terminated Father's parental rights based on findings that Father abused and/or neglected A.P.S. and that Father failed to rectify conditions that led to A.P.S. coming into the care of DFS. In finding that Father failed to rectify the conditions that led to A.P.S. coming into the care of DFS, the court specifically found that through Father's extensive criminal behavior, he placed himself in a position where he could not take advantage of treatment recommendations that would aid him in parenting the minor child. The court also noted *235 that Father was not due to be released from prison until approximately 2005.
While § 211.447.6(6) prohibits termination of parental rights based solely upon a parent's incarceration, it also requires that the juvenile court consider that incarceration in making its decision. Section 211.447.6(6) states that when considering whether to terminate parental rights, the court shall consider
The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights[.]
The juvenile court considered Father's incarceration and found that Father's conviction of a felony offense is of such a nature that A.P.S. would be deprived of a stable home for a period of years. The juvenile court also found that the continuation of a parent-child relationship between Father and A.P.S. greatly diminished A.P.S.'s prospects for early integration into a stable and permanent home. As noted by the court, a single felony conviction was not the basis of the termination. It was Father's volitional, extensive criminal behavior that prevented A.P.S. from receiving appropriate parenting from Father.
When A.P.S. first came into the care of DFS, he was placed in a Greene County foster home, but had to be removed due to his aggressive behavior such as hitting a foster brother, pulling out chunks of hair, threatening his foster mother and destroying property. He was then admitted to Cox North Child/Adolescent Psychiatric Unit and diagnosed with conduct disorder and adjustment disorder with depressed mood. It was recommended that A.P.S. be placed in a residential facility that could provide a structured environment and he was placed at Challenge-N-Change. A.P.S. remained at Challenge-N-Change until he was placed with his uncle in May 2000. The uncle subsequently requested that A.P.S. be removed from his home and reported that A.P.S. had been defiant and manipulative, had broken out the window of a boat and a neighbor's vehicle, was having difficulty with his behavior at school, and took money from his uncle's home and set the money on fire when he was confronted. A.P.S. was removed from his uncle's home and returned to Challenge-N-Change on August 25, 2000.
Lisa Alford, A.P.S.'s social worker, testified that Father was not considered a placement resource for A.P.S. because his incarceration was expected to continue until April 2005. She also stated that A.P.S. had "some significant behavioral problems" and would be a difficult child to parent even in the best situation, but did well in a "structured, supervised setting" and that permanency outside the parental home was in the best interests of A.P.S. In Alford's opinion, for A.P.S. to successfully transition to a permanent home, the parent-child relationship would have to be terminated.
Father admitted that he had spent more time in prison than at home with A.P.S. and that A.P.S.'s mother provided the majority of the child's care. He stated that the longest period of time he has spent providing care for A.P.S. was eight months during 1990 and 1991. Father did not know where A.P.S. should be placed while he was incarcerated, but hoped that A.P.S.'s maternal aunt would care for A.P.S. until his release. It is clear that Father would be unable to comply with any social service plans or efforts provided by DFS to reunify him with A.P.S.
We agree with the court's finding that Father's incarceration is of such a nature that A.P.S. would be deprived of a stable home for a period of years. There was *236 sufficient evidence for the juvenile court to find that A.P.S. was in the jurisdiction of the juvenile court for one year, that the conditions which led to the assumption of jurisdiction still persist, and that there is little likelihood that the conditions will be remedied at an early date so that A.P.S. can be returned to Father in the near future. Because the provisions of § 211.447.4(3) were supported by sufficient evidence, we need not address the juvenile court's other grounds for terminating Father's parental rights to A.P.S. See In the Interest of M.N.M., 906 S.W.2d 876, 879 (Mo.App. S.D.1995). Father's point relied on is denied.
The evidence supports the juvenile court's termination of Father's parental rights based on Father's failure to rectify the conditions that led to A.P.S. coming into the care of DFS. The juvenile court's termination of Father's parental rights to A.P.S. is affirmed.
PREWITT, P.J., and PARRISH, J., concur.
NOTES
[1] Neither A.P.S.'s mother nor his unknown biological father appeal the termination of their parental rights; therefore, the judgment terminating the mother and unknown biological father's parental rights is final.
[2] All references to statutes are to RSMo 2000, unless otherwise indicated.