**In re The Interest of W.J.S.M. A Minor Child Kathryn Herman Juvenile Officer, Respondent,**

v.

**M.H., The Child's Natural Mother, Appellant.**

**No. ED 88904.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 10, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 2007.

Application for Transfer Denied
Sept. 25, 2007.

Mary D. Fox, St. Louis, MO, for Appellant Mother.

Mary Davidson, St. Louis, MO, Guardian Ad Litem for Mother.

Loretta L. Wofford, St. Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Appellant ("Mother") appeals the judgment terminating her parental rights to W.J.S.M. ("Child"). Finding no error, we affirm.

## I. BACKGROUND

Sufficiency of the evidence is not disputed. A brief discussion of the facts is required.

Mother gave birth to Child on November 1, 2004. Within days of Child's birth, the Juvenile Officer filed a Petition requesting the Court to assume jurisdiction over Child. In its findings and order, the Court noted that four of Mother's five children were in the custody of the State and that Mother's rights to three children were earlier terminated involuntarily.[1] Having suffered respiratory distress soon after birth, Child was intubated. Mother responded by asking a nurse "when is the tube coming out and when is she coming home?" Mother then called the nurse a "bitch" and indicated that she would remove Child's breathing tube herself. The court further found that Mother admitted she is schizophrenic. Child has at no time resided with mother.[2]

Mother's attorney was initially appointed both as attorney for Mother and Mother's Guardian Ad Litem ("GAL"). The Court later appointed a separate attorney as Mother's GAL.

Mother's attorney filed a verified Motion for Continuance of the dispositional hearing on the termination petition, asserting that Mother was hospitalized for a competency examination to determine if Mother

1. An exhibit from the initial Order taking jurisdiction over Child stated: (a) Paternity testing has confirmed that W.M. is the biological father of the Juvenile; (b) Mother has five (5) other children, four (4) of whom remain in the custody of Children's Division; (c) Mother's parental rights to the minor children A.H., P.M. and L.M. were involuntarily terminated by this Court upon findings, conclusions and judgment entered on August 7, 2001; (d) Mother appeared in person and by counsel at the evidentiary hearing with respect to the termination of her parental rights for the said Juvenile; (e) Mother's parental rights to the Juvenile's sibling K.M. were terminated on August 21, 2001; (f) Mother's pregnancy with the Juvenile was complicated by a history of syphilis and a history of hepitis (sic) C; (g) The Juvenile was intubated at five minutes of life for respiratory distress; (h) On November 1, 2004, Mother was transported to the Juvenile's room, and Mother asked the nurse "when is the tube coming out and when is she coming home"; (i) Mother told the nurse that she wanted the tube out now, and, as the nurse walked away, Mother yelled "bitch"; (j) The nurse remembered Mother from a prior hospital visit, at which time Mother had been completely appropriate; (k) Mother yelled at the nurse "you're a stupid bitch and you are going to die"; (l) Mother placed her hand in the face of the nurse but did not physically touch her; (m) Mother informed the nurse that she would take the breathing tube out of the Juvenile by herself but did not make any attempt to do so; (n) According to Mother, she had multiple psychiatric admissions during the first few weeks of the pregnancy; (o) Mother informed the hospital staff at Children's Hospital that she is not currently being followed by a psychiatrist; (p) Mother admits that she is schizophrenic; (q) At the time of the Juvenile's birth, the Juvenile was suffering from respiratory distress; (r) Father has been diagnosed as suffering from psychosis other than schizophrenia; (s) The Juvenile requires special care for her medical condition since being discharged from Children's Hospital.

2. Child has lived with Mother's sister since birth. She is willing to adopt Child.

was competent to proceed with a hearing on a probation revocation in an unrelated criminal matter. This Motion further alleged that counsel was not able to meet privately with Mother due to safety concerns, and that Mother thought she was being held hostage by the secret service.

Mother's attorney filed a Request for Competency Hearing for Mother, in which the GAL joined. The Motion requested a determination of Mother's ability to understand the proceedings and assist counsel, and alleged that Mother was unable to supply information pertinent to the issues in dispute and unable to make decisions as to how to proceed. Attached to the Motion was a report from an expert which opined that Mother "is not competent to proceed" and concluded, "she is not capable of working with her attorney and is not able to assist her attorney in her defense." The Motion was denied.

Mother's attorney filed a Petition for Writ of Habeas Corpus ad Testificundum (sic) requesting that Mother be brought from the St. Louis Psychiatric Rehabilitation Center for the trial. A hearing was held on the Petition for Writ of Habeas Corpus ad Testificandum and the Court denied the Petition. At the hearing, Mother's GAL opposed the Petition for Writ of Habeas Corpus ad Testificandum, stating that it was not in Mother's best interest to be present in Court at the termination hearing. The GAL described Mother's mental condition as "actively psychotic" and characterized her presence at Court as requiring that she be "strapped to a gurney" due to her violent outbursts. Upon denial of the Petition for Writ of Habeas Corpus ad Testificandum, Mother's attorney orally requested that the Court continue the termination hearing based on the fact that Mother would not be present at the hearing without issuance of the Writ.

The Court denied the oral request for a continuance, at which time Mother's attorney filed a written request for a continuance, which the Court denied.

Mother's attorney then filed a Petition for Writ of Prohibition in this Court. The Writ sought to prohibit the Juvenile Court from proceeding to a hearing on the Petition to Terminate Parental Rights unless the Writ of Habeas Corpus ad Testificandum was granted so Mother could be present at the hearing. This Court denied the Petition for Writ of Prohibition. Mother's attorney then filed a Writ of Prohibition in the Missouri Supreme Court which was denied.

Mother's attorney filed a Motion to Reconsider Mother's Request for a Competency Hearing. Additionally, Mother's attorney filed another Petition for Writ of Habeas Corpus ad Testificandum. Both Mother's motion and petition were introduced prior to the start of the termination hearing and both were denied. After receiving evidence, the Court terminated Mother's parental rights to Child, finding Mother suffers from a permanent mental condition that renders her unable to knowingly provide care, custody and control for the Child.

## II. DISCUSSION

Mother raises two points on appeal.[3] Mother's first point alleges error in the trial court's refusal to have her physically brought to the courtroom for the hearing. Mother's second point alleges that since she was incompetent to proceed to trial or provide assistance to her attorney, counsel was thereby ineffective.

■■■ We affirm the judgment of the juvenile court unless it is not supported by the evidence, it is against the weight of the

3. Mother's Motion to file Supplemental Legal File is granted.

evidence, or it erroneously declares or applies the law. *Anderson v. Jackson,* 181 S.W.3d 172, 176 (Mo.App. S.D.2005) (citing *Suffian v. Usher,* 19 S.W.3d 130, 135–36 (Mo. banc 2000)). In custody proceedings, the welfare of the child is the primary and overriding consideration. *Id.* at 175. The rights and claims of the natural parent must be of secondary importance. *Id.* We defer to the findings of the trial court unless they evidence an abuse of discretion. *Id.*

■ Mother's first point alleges the trial court erred by denying Mother's Petition for a Writ of Habeas Corpus ad Testificandum denying Mother's attorney's request to have Mother attend the hearing in person or by alternative means and denying Mother's attorney's request for a continuance because Mother had a constitutional and a statutory right to be present in person or by alternative means and to testify on her own behalf.[4]

■ Mother's attorney couches her argument in terms applicable to a criminal proceeding, but termination of parental rights is a *civil* proceeding.

> We recognize the gravity of proceedings which terminate parental rights and the appearance of the parent whose rights are sought to be terminated is certainly extremely important to that proceeding. The child has corresponding rights. However, there is no statutory or common law right to be present and the proceeding is not per se defective where presence is not feasible.

*H.W.S. v. C. T.,* 827 S.W.2d 237, 242 (Mo.App. E.D.1992). Mother's attorney concedes that due to Mother's mental condition, she would not have been able to participate or assist counsel at the hearing. "The matter of the issue of the writ of habeas corpus rests within the discretion of the trial court." *State v. Hines,* 645 S.W.2d 88, 90 (Mo.App.1982).

As discussed below, a more apt analogy would compare the parent in a termination case to the Respondent in a probate matter seeking guardianship and/or conservatorship over a person alleged to be incapacitated and/or disabled. In courtrooms across Missouri, probate divisions routinely appoint counsel for persons alleged to be incapacitated and/or disabled. Many of these individuals are unable to assist counsel, and often do not attend the hearing. In those cases, as in this case, appointed counsel represent their clients to the best of their ability without assistance from the client. If found to be incapacitated and disabled, the Respondents in those cases are often stripped of their ability to handle their finances and many are removed from their homes to enter more restrictive environments providing supervision to assure their well being.

■ Moreover, Section 475.075 RSMo 2000 grants the Respondent in a guardianship proceeding the right to be present. However, counsel appointed to represent the Respondents in such cases often waives that right on behalf of the client. Counsel is entitled to waive the presence of a party.[5] In this case the trial court did not arbitrarily and capriciously bar Mother from the hearing. The attorney charged with defending the Petition for Termination of Parental Rights wanted Mother present, even though Mother could not assist at the hearing. The attorney serving as Mother's GAL, charged with protecting the Mother's interests, determined

---

**4.** Pursuant to Supreme Court Rule 117.01(a), "the juvenile's custodian shall have the right to be present at all times during any hearing". "Custodian" includes the parent. Supreme Court Rule 110.05.

**5.** We note that Counsel is entitled to waive a defendant's presence in a criminal case. *State v. Sanders,* 539 S.W.2d 458 (Mo.App. 1976).

that being personally present for the hearing would *not* be in Mother's best interests. The GAL is given the discretion to waive the presence of the person being represented. It has also been stated that a Guardian ad Litem is the more unique position, as the Guardian ad Litem represents an interest brought into court involuntarily. *Tracy v. Martin,* 363 Mo. 108, 249 S.W.2d 321, 323 (banc 1952).

Mother has cited no cases, and we find none, that *require* the physical presence of a parent who is represented by counsel in a termination of parental rights proceeding. We find no error or abuse of discretion with the trial court's deference to the wishes of the GAL and denying the Writ of Habeas Corpus ad Testificandum. Point denied.

 In her second point, Mother contends that because she was incompetent to assist counsel in her own defense, she was therefore denied her right to effective assistance of counsel at trial. Mother cites no case to support this position. Mother alleges: "Counsel in this instance was unable to provide Mother a meaningful hearing. Counsel was unable to discuss the petition and the consequences of termination of parental rights with Mother because of her lack of competency to assist counsel." In her first point, Mother alleges that she should have been physically present for the hearing; in her second point, she alleges that had she been present, she was not competent to proceed with the hearing or assist counsel with the case.

 While due process requires competence to stand trial in a criminal matter, no such requirement exists in a civil case even though *State ex rel. Nixon v. Kinder,* 129 S.W.3d 5 (Mo.App.W.D. 2003) acknowledged a civil commitment is a "significant deprivation of liberty." Id. at 10. An individual can be a party to a divorce action even though he is incompe-

tent. *Dunn v. Dunn,* 240 Mo.App. 87, 216 S.W.2d 141, 143 (1948). The incompetent party in a divorce proceeding simply needs to have a Guardian ad Litem appointed. Id. Here, Mother was represented by counsel *and* a Guardian ad Litem, thereby protecting her interests. Parties who are "incompetent", underage, or suspected of being incompetent are entitled to have their interests protected by a Guardian ad Litem.

 The trial court properly appointed a GAL for Mother in addition to counsel. To require that a parent must be "competent" before a court could terminate their parental rights ignores the rights of the child to permanency. The basis for terminating Mother's parental rights was substantially based on the fact that Mother suffers from a mental condition which is *permanent* and renders her unable to provide the child with the necessary care, custody and control. Mother's mental condition was *the* major factor in the termination of her parental rights. Whether or not Mother can "knowingly and intelligently confer with counsel" and "understand the nature of the proceedings against her" is a criminal standard which is wholly irrelevant in a civil action. *In the Interest of C.N.W. v. Lafata,* 26 S.W.3d 386 (Mo. App.E.D.2000), states:

> Termination of parental rights proceedings are statutory creatures and as such, must be conducted in strict accordance with the provisions set forth in Chapter 211 of the Revised Statutes of Missouri, and Rules 110 through 128 of the Missouri Court Rules. Id. These provisions are civil rather than criminal in nature, and do not provide for a separate post-termination hearing to ascertain whether a parent has received effective assistance of counsel.

*Id.*

The test is whether the attorney was effective in providing his client with a meaning-

ful hearing based on the record. *In Interest of J.C., Jr.,* 781 S.W.2d 226, 228 (Mo. App.W.D.1989); *In the Interest of C.D.M.,* 888 S.W.2d 725, 726–27 (Mo.App.E.D. 1994). Here, the record reveals that counsel did an admirable job of representing Mother and provided her with a meaningful hearing. The facts amply demonstrate that Mother is unable to act as a parent due to her severe mental condition. Point denied.

### III. CONCLUSION

We hold that the trial court did not abuse its discretion in declining to issue a Writ of Habeas Corpus ad Testificandum for Mother's appearance, and that Mother's inability to assist counsel or understand the proceedings does not prevent a hearing in a termination of parental rights case.

The judgment is affirmed.

KATHIANNE KNAUP CRANE, and SHERRI B. SULLIVAN, JJ., Concur.