**In the Interest of: A.G.R.**

**Juvenile Officer, Respondent,**

v.

**A.G.R., Appellant.**

**No. WD 73007.**

Missouri Court of Appeals,
Western District.

Dec. 27, 2011.

Megan C. Roth, Kansas City, MO, for Appellant.

Michael R. Fogal, Kansas City, MO, for Respondent.

Laurie V. Snell, Kansas City, MO, Guardian ad litem.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Presiding Judge.

A.G.R., a juvenile, appeals the Judgment of the Circuit Court of Jackson County, Missouri, Family Court—Juvenile Division ("juvenile court") asserting jurisdiction over A.G.R. and providing services to him arising out of a charged status offense under section 211.031.1(2)(d).[1] We affirm.

### Facts and Procedural Background[2]

On July 28, 2009, sixteen-year-old A.G.R. was visiting his grandmother at his

---

1. All statutory references are to RSMo Cum. Supp.2010, unless otherwise indicated.

2. We view the facts in the light most favorable to the trial court's (i.e. juvenile court) deci-sion. *In the Interest of T.S.G. v. Juvenile Officer,* 322 S.W.3d 145, 149 (Mo.App. W.D. 2010).

uncle's home, where she was residing. A.G.R.'s aunt observed A.G.R. lying on the couch with his two-year-old niece, R.D., on his lap below his genital area with her hand on his penis and his hand on her hand, rubbing her hand on his penis. A.G.R.'s aunt grabbed R.D. and told A.G.R. to get out. A.G.R. left the house. A.G.R.'s aunt called the police and reported a sex offense. Officer Corey Randall responded to the call and observed A.G.R. running on the sidewalk. Officer Randall stopped him and asked him to identify himself. A.G.R. gave Officer Randall his name and told her he was headed to the gas station to call his mother. The officer confirmed with police dispatch that A.G.R. was the person involved in the call. Officer Randall frisked A.G.R. for weapons and waited with A.G.R. on the sidewalk for other officers to arrive. The patrol division supervisor, Sergeant Mike Onka, was the first officer that arrived on the scene. Officer Randall then told A.G.R. that she was going to transport him back to his uncle's home where A.G.R.'s mother was waiting. Sergeant Onka opened the door to Officer Randall's patrol car and asked A.G.R. to step in and put his seatbelt on. A.G.R. looked at Sergeant Onka and stated: "It wasn't me. It was my body. I wasn't in control of my mind at the moment."

Officer Randall transported A.G.R. to his uncle's house in the backseat of her patrol car. Officer Randall got out of the car to talk with A.G.R.'s mother, who informed Officer Randall that A.G.R. had a low IQ and multiple mental diagnoses. When Officer Randall returned to her vehicle, A.G.R. asked if he could talk to his mother. Officer Randall said, "[N]ot right now." When Officer Randall was checking with A.G.R. to see if he had identification, A.G.R. stated: "Because she walked in and somehow her hand was on my dick." Officer Randall told A.G.R. that she didn't want A.G.R. to talk about anything that had occurred. Officer Randall explained to A.G.R.'s mother that she was taking A.G.R. to headquarters and that he would be transferred to juvenile detention after that.

On July 29, 2009, the Juvenile Officer filed a "delinquency offense" Petition alleging that A.G.R. committed acts, which, if committed by an adult, would have resulted in a charge of felony statutory sodomy in the first degree, § 566.062, for having deviate sexual intercourse with R.D., who was less than fourteen years old. On July 31, 2009, a detention hearing was held, and the juvenile court ordered A.G.R. detained at home with electronic monitoring under the supervision of his mother. On August 12, 2009, A.G.R.'s counsel entered her appearance as A.G.R.'s attorney of record. On September 10, 2009, the Juvenile Officer filed a first amended petition, alleging that A.G.R. had committed "status offense" acts constituting behavior injurious to the welfare of a child in that A.G.R. exposed his genitalia and had deviate sexual intercourse with R.D. On the same date, the juvenile court ordered the Department of Mental Health to provide services to deal with any retardation and psychiatric issues that may exist and ordered the Children's Division to conduct an evaluation of A.G.R. for determining appropriate services and a treatment plan. On October 14, 2009, the Juvenile Officer filed a second amended petition, alleging that A.G.R. had committed "status offense" acts constituting behavior injurious to the welfare of a child in that A.G.R. exposed his genitalia and had his hand on the hand of R.D., moving her hand up and down his exposed penis.

After a court-ordered competency evalu-

ation[3] of A.G.R., the juvenile court determined that A.G.R. was mentally incompetent and, on January 20, 2010, the juvenile court appointed a guardian *ad litem* for A.G.R.[4] Thus, A.G.R. had both a lawyer to serve as his personal counsel *and* a guardian *ad litem* to advocate A.G.R.'s best interests. A.G.R.'s counsel filed a motion to dismiss for lack of jurisdiction or, in the alternative, to suspend proceedings while the juvenile remains incompetent. The juvenile court denied the motion and set the matter for final hearing. A.G.R.'s counsel renewed the motion on two additional occasions and each time the juvenile court overruled the motion for dismissal or suspension of the proceedings. The status offense case proceeded to disposition.

After receiving testimony and other evidence, the juvenile court granted the relief requested by the Juvenile Officer's second amended petition, finding that A.G.R. was in need of care and treatment. On September 15, 2010, the juvenile court entered a Judgment, ordering that A.G.R. be placed in the care and custody of his mother, under the joint supervision of Children's Division and Family Court Services; that he undergo behavioral therapy; that he not have contact with R.D.; and that he not have unsupervised contact with children under the age of twelve years old.

A case review hearing was held December 15, 2010. The juvenile court ordered that all previous orders were to remain in effect; A.G.R. was allowed supervised visits with his grandmother and was allowed to travel to the State of Texas with his mother in March 2011. On April 6, 2011, the juvenile court entered a Judgment releasing A.G.R. from the juvenile court's jurisdiction, finding that A.G.R. was no longer in need of services, ordering the prior orders terminated, and releasing and discharging A.G.R. from the juvenile court's jurisdiction. Though A.G.R. has been released from the jurisdiction of the

---

3. Under Rule 117.01, after a petition has been filed under section 211.031.1, the juvenile court may order an examination of the juvenile by a physician, psychiatrist, or psychologist to aid the court in determining: "any allegation in the petition ... relating to the juvenile's mental health or physical condition"—Rule 117.01.a(1); "the juvenile's competence to *participate* in the proceedings"—Rule 117.01.a(2) (emphasis added); "whether the juvenile is a proper subject to be dealt with by the [family] court"—Rule 117.01.a(3); "any other matter relating to the hearing on the petition ... or the proper disposition or treatment of the juvenile."—Rule 117.01.a(4). Rule 117.01 thus equips the juvenile court with a tool to help the juvenile court decide if adult certification is appropriate or whether— in the context of a continuing juvenile proceeding—there are factors that must be considered as they relate to the manner in which the juvenile has been charged under the juvenile code (i.e. delinquency offense versus status offense). Notably, the rule does not refer to obtaining such an examination to assist in the determination of the juvenile's competence to "stand trial" for the juvenile offense charged but, rather, to assist in the determination of how the juvenile may "participate" in the proceedings. In a *delinquency* offense proceeding, the juvenile's ability to "participate" may trigger certain "quasi-criminal" due process protections, whereas in a *status* offense proceeding—a civil proceeding that has no criminal or even "quasi-criminal" ramifications—juvenile "participation" (or lack of ability to do so due to incompetence) is protected by the appointment of a guardian *ad litem*. *Juvenile Officer v. M.H. (In the Interest of W.J.S.M.)*, 231 S.W.3d 278, 283 (Mo.App. E.D.2007). We find it no coincidence that, though A.G.R. was represented by counsel, the juvenile court also appointed a separate guardian *ad litem* upon determining A.G.R.'s incompetence.

4. The roles of a lawyer for the juvenile and a guardian *ad litem* are different and clearly distinguishable. Standard 2.0, App. C following Rule 129.04. "A lawyer guardian ad litem is not the lawyer for the child and, therefore, advocates the best interests of the child rather than merely representing the child's preferences." *Id.*

juvenile court, A.G.R. appeals the Judgment below.

## Jurisdiction

As a threshold issue, we consider whether we should dismiss this appeal *sua sponte* for mootness because A.G.R. is no longer under the jurisdiction of the juvenile court, and "[w]e do not decide questions of law disconnected from the granting of actual relief." *In the Interest of T.S.G. v. Juvenile Officer*, 322 S.W.3d 145, 148 (Mo.App. W.D.2010) (internal quotation omitted). "With regard to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy." *Id.* (internal quotations omitted). "The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." *Id.* (internal quotations omitted). However, an appellate court may exercise its discretion to decide otherwise moot issues under three circumstances: "(1) the action becomes moot after the case has been argued and submitted; (2) the issue is one of general public interest and importance and is capable of recurring and likely to evade appellate review; or (3) the decision being appealed could have significant collateral consequences for one or more of the parties." *Id.* (citations omitted).

■ Because the issues raised in A.G.R.'s motion to dismiss or to suspend proceedings are prevalent and likely to evade appellate review (given the nature of juvenile proceedings) and, also, are important issues of general public interest and of first impression in Missouri, we will proceed to address the issues raised by A.G.R. based on the public interest exception to the mootness doctrine. *Id.*

## Standard of Review

■ We review a juvenile proceeding under the same standard we apply in other court-tried civil cases. *In the Interest of T.L.C.*, 950 S.W.2d 293, 295 (Mo.App. W.D. 1997). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). In determining whether this standard has been met, we view the evidence in the light most favorable to the judgment, and we disregard all contrary inferences. *Id.* We defer to the trial court's determinations of witness credibility and of the weight to be given their testimony. *Id.*

## Analysis

### Incompetency

■ In A.G.R.'s first point on appeal, he asserts that the juvenile court erred in denying his motion to dismiss or to suspend the proceeding while he remained incompetent, thereby violating his right to due process. A.G.R. argues that because the behavior underlying the charge would have been a crime if he had been seventeen at the time of the offense, he was entitled to the panoply of rights of a criminal defendant. Furthermore, he asserts that because he had been found incompetent by the juvenile court prior to adjudication, the proceedings should have been dismissed or suspended while he remained incompetent.

■ The flaw in A.G.R.'s argument is that this is not a case in which he was charged with, convicted of, and sentenced for a criminal offense. "Juvenile proceedings are in the nature of civil proceedings...." *In the Interest of D.L.*, 999 S.W.2d 291, 293 (Mo.App. E.D.1999). Therefore, the due process rights accorded criminal defendants do not apply. "While due process requires competence to stand trial in a criminal matter, no such require-

ment exists in a civil case...." *Juvenile Officer v. M.H. (In the Interest of W.J.S.M.)*, 231 S.W.3d 278, 283 (Mo.App. E.D.2007). "Parties who are 'incompetent', underage, or suspected of being incompetent are entitled to have their interests protected by a Guardian ad Litem." *Id.* "Whether or not [a party] can 'knowingly and intelligently confer with counsel' and 'understand the nature of the proceedings against [him]' is a criminal standard which is wholly irrelevant in a civil action." *Id.*

█ Section 211.031 sets forth the jurisdiction of the juvenile court. Section 211.031.1(2) provides for jurisdiction over those juveniles who are charged with a status, or non-criminal, offense. A status offense is a charge unique to juveniles and is an infraction that allows the juvenile court to take jurisdiction of a child (under age 17) alleged to be in need of care due to truancy, being beyond parental control, absence from home—runaway, or behavior injurious to welfare. 21A NANCY A. GARRIS & JACK COCHRAN, MISSOURI FAMILY LAW § 19.18 (Mo. Practice Series 3d ed.2000) (citing § 211.031.1(2)). Status cases under section 211.031.1(2) are fundamentally different from delinquency cases under section 211.031.1(3), in which a child is alleged to have violated a state law or municipal ordinance.[5]

█ A.G.R. relies on the seminal case concerning the due process rights of juveniles, *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), to support his proposition that juveniles who are charged with *misconduct* have constitutional due process rights. However, *Gault*'s application is narrower than A.G.R. describes. The *Gault* court outlined the essentials of procedural due process in the context of a juvenile *delinquency* adjudication case where the consequence was incarceration in a state institution for six years. *Id.* at 26, 87 S.Ct. 1428.[6] In this case, A.G.R. was charged under the juvenile code with the *status* offense of injurious behavior. § 211.031.1(2)(d).[7] The characterization of the juvenile code charge alleged (*delinquency* versus *status* offense) is a distinction with a difference. Missouri law

**5.** The United States Supreme Court has applied certain rights enumerated within the Bill of Rights to juvenile *delinquency* adjudications. *State v. Andrews*, 329 S.W.3d 369, 374 (Mo. banc 2010). *See Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (applying various due process rights to juvenile proceedings including notice of charges, right to counsel, right of confrontation and cross-examination, and privilege against self-incrimination); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof-beyond-reasonable-doubt standard applies to delinquency proceedings); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy protection applies to delinquency proceedings); *but see McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (holding that a trial by jury is not constitutionally required for juvenile court adjudications).

**6.** Similarly, A.G.R. cites to *T.S.G.*, in which we rejected the juvenile officer's attempt to circumvent certain due process rights to obtain an order for providing services to the juvenile. 322 S.W.3d at 150. Again, however, *T.S.G.* is inapplicable to this case in that the juvenile officer in *T.S.G.* had alleged a *delinquency* offense and not a *status* offense. *Id.* For reasons noted in our ruling today, there are significant differences between a *delinquency* versus a *status* offense adjudication juvenile proceeding.

**7.** The broad language of this "status offense" section allows the family court to exercise exclusive original jurisdiction over acts by juveniles that "would be *delinquent* but for lack of an appropriate culpable state of mind or mental capacity." Bradley P. Grill, *Status Offenses*, MISSOURI JUVENILE LAW § 8.12 (The Missouri Bar 4th ed.2011).

treats *status* offenses and *delinquency* offenses differently, including but not limited to, differences relating to the standard of proof, confidentiality of records, registration, detention, adult certification, and sentencing considerations, to-wit:

- Status offenses require the "clear and convincing" standard of proof, *Juvenile Officer v. B.C. (In the Interest of I.M.B.)*, 897 S.W.2d 146, 149–50 (Mo. App. W.D.1995), while delinquency offenses require "proof beyond a reasonable doubt." *C.M.G., II v. Juvenile Officer*, 258 S.W.3d 879, 882 (Mo.App. W.D.2008).
- If a juvenile is charged with an offense that would be a class A felony if committed by an adult or with capital murder, first-degree murder, or second-degree murder, the juvenile court records will be open to inspection; if a report is required under section 557.026, RSMo 2000, a list of certain delinquency violations shall be included, § 211.321.1; in all status offense proceedings, the records of the juvenile court are confidential, § 211.321.2.
- Section 211.063, RSMo 2000, places specific restrictions on detaining status offenders in secure detention.
- No child committed to the Division of Youth Services as a status offender may be placed in a named secure or a named moderate Division of Youth Services regional care facility housing delinquency offenders, unless the juvenile is subsequently adjudicated of a delinquency offense. § 219.021.3, RSMo 2000.
- A juvenile who committed or attempted to commit a sex-related act for which the juvenile was adjudicated a delinquent, which would be a felony if committed by an adult, is considered a juvenile sex offender and is required to register, § 211.425.1.

- A status offense is not considered an adjudicated felony for purposes of considering prior felonies (commission of two or more prior unrelated delinquency offenses that would be felonies if committed by an adult) under section 211.071 and does not expose the juvenile to risk of a mandatory certification hearing.
- Status offenses cannot be used against the juvenile in some sentencing considerations in subsequent adult criminal proceedings; for example, United States Sentencing Guidelines § 4A1.2(c) precludes the consideration of juvenile status offenses in computing a criminal history score. *United States v. Newsome*, 409 F.3d 996, 998 n. 2 (8th Cir.2005).

The child welfare policy in Missouri is based on "what is in the best interests of the child." § 211.011, RSMo 2000. The purpose and philosophy of the juvenile court system as expressed in section 211.011 is "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." To further that purpose, the juvenile code is to be liberally construed. § 211.011. In this case, the juvenile court was presented with a juvenile whose behavior was injurious to his welfare and to the welfare of others and, absent his mental disability, might have been a violation of state law. However, rather than invoking the jurisdiction of the juvenile court under section 211.031.1(3) and alleging delinquency, the Juvenile Officer chose to charge A.G.R.'s alleged conduct as a status offense. How the Juvenile Officer chooses to frame the allegations determines what rights will be accorded the juvenile. Although some of the protections accorded a juvenile charged with a *delinquency* offense were not available to A.G.R., he also was not exposed to the *consequences* of delinquen-

cy adjudication in this *status* offense juvenile proceeding. Here, A.G.R. had the benefit of representation by both counsel *and* a guardian *ad litem.* A.G.R.'s interests were protected. Thus, the juvenile court did not err in denying A.G.R.'s motion to dismiss or suspend the proceeding while A.G.R. remained incompetent.

Point I is denied.

### Standard of Proof

■ In his second Point, A.G.R. asserts that the juvenile court erred in reviewing the evidence under the clear and convincing standard of proof rather than the beyond a reasonable doubt standard because the alleged misconduct would have been a crime if A.G.R. had been seventeen or older at the time of the offense.

■ We agree with A.G.R. that due process requires the standard of proof to be beyond a reasonable doubt in the adjudicatory stage of a juvenile *delinquency* proceeding when the juvenile is charged with an act that would constitute a crime if committed by an adult. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, the Juvenile Officer's second amended petition did *not* allege that A.G.R. violated a state law but, instead, alleged that he engaged in behavior injurious to his welfare and the welfare of others—a status offense. After determining the facts that would bring the juvenile within the jurisdiction of the juvenile court, the Juvenile Officer has the discretion to choose the offense charged.

■ Juvenile proceedings are governed by the Juvenile and Family Court Rules of Procedure and, if no procedure is specifically provided, then by the "practice and procedure customary in proceedings in equity." Rule 110.03; § 211.171.7. When issues are tried in equity, the degree of proof is clear, cogent, and convincing evidence. *Fisher v. Miceli,* 291 S.W.2d 845, 848 (Mo.1956); *In the Interest of I.M.B.,* 897 S.W.2d at 149 ("[C]lear and convincing is the standard of proof in a hearing on a petition alleging as a basis for jurisdiction that the child is in need of care and treatment of the juvenile court."); GARRIS, *supra* § 19.18. Therefore, the juvenile court's application of a "clear and convincing" standard of proof was not error.

Point II is denied.

### Suppression of Evidence

In A.G.R.'s third Point, he claims that the juvenile court erred in denying his motion to suppress his statements made to police officers after he was stopped and in custody, and before he was given *Miranda*[8] warnings. He also argues that he should have been taken immediately to the juvenile officer.

■ A.G.R. argues that his rights under section 211.059 were violated when the police officers failed to inform him of his *Miranda* rights and refused to allow him to speak to his mother. Section 211.059.1 provides that when a child is taken into custody by a law enforcement official for an offense that would place the child under the jurisdiction of the juvenile court pursuant to section 211.031.1(2) or (3), "the child shall be advised *prior to questioning*":

(1) That he has the right to remain silent; and

(2) That any statement he does make to anyone can be and may be used against him; and

(3) That he has a right to have a parent, guardian or custodian present during questioning; and

(4) That he has a right to consult with an attorney and that one will be appoint-

8. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ed and paid for him if he cannot afford one.

(Emphasis added.) The police officers both testified that they did *not* ask A.G.R. any questions. When A.G.R. was transported to the scene of the alleged incident, he asked Officer Randall if he could talk to his mother, and the officer told A.G.R. that he could not speak to her at that time. A.G.R. then told Officer Randall, "[b]ecause she walked in and somehow her hand was on my dick." The officer responded that "I didn't want him to talk to me about anything that occurred." Thus, not only had the officers not questioned A.G.R., A.G.R. was specifically directed not to discuss the alleged incident. The trial court specifically found that there was no formal, direct questioning of A.G.R. and that each of the statements he made to the officers were spontaneous, without a question eliciting those statements.[9] Viewing the evidence in the light most favorable to the judgment and deferring to the trial court's determinations of witness credibility and of the weight to be given their testimony, we find that A.G.R.'s rights under section 211.059.1 were not violated and the juvenile court did not err in denying A.G.R.'s oral motion to suppress the challenged statements.

▮ A.G.R. also asserts that his rights under section 211.061.1 were violated when Officer Randall took him back to the scene rather than directly to juvenile court. Section 211.061.1 instructs:

> When a child is taken into custody with or without warrant for an offense, the child, together with any information concerning the child and the personal property found in the child's possession, shall be taken immediately and directly before the juvenile court or delivered to the juvenile officer or person acting for him.

When Officer Randall stopped A.G.R., A.G.R. told the officer that he was headed to the gas station to call his mother. After confirming A.G.R.'s identity with the police dispatcher and frisking A.G.R. for weapons, Officer Randall requested that the police dispatcher contact A.G.R.'s mother. The police dispatcher told the officer that A.G.R.'s mother was at the scene of the alleged offense; so Officer Randall transported A.G.R. back to the scene in the rear seat of the patrol car. The officer talked to A.G.R.'s mother, explaining to her that the officer was going to take A.G.R. to headquarters and that he would be transferred to juvenile detention after that. A.G.R.'s mother informed the officer that A.G.R. has a low IQ and multiple mental diagnoses.

The Juvenile Officer suggests that Officer Randall returned to the scene to gather information about the case and about A.G.R. from A.G.R.'s mother and to tell her what was happening. The Juvenile Officer contends that this information-sharing and –gathering by Officer Randall with A.G.R.'s mother was permitted by the statute, which states that the child *together with any information concerning the child* shall be taken immediately and directly to juvenile court. Under the circumstances

9. Because the section 211.059.1 warning contains *Miranda* elements, we consult Supreme Court precedent regarding statements to law enforcement given freely and voluntarily without any compelling influences. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602. "[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). *See also Gregg v. State*, 446 S.W.2d 630, 632 (Mo.1969); *State v. Reese*, 26 S.W.3d 323, 324–25 (Mo.App. E.D.2000).

of this case, we find that Officer Randall did not unreasonably delay in taking A.G.R. to juvenile court. Conferring with A.G.R.'s mother, who was located only a few blocks from where A.G.R. was apprehended, did not involve a lengthy interval of time or a substantial deviation in the officer's proceeding to juvenile court as to be unreasonable. Viewing the evidence in the light most favorable to the judgment, we find that A.G.R.'s rights under section 211.061.1 were not violated.

Point III is denied.

### Conclusion

The judgment of the juvenile court is affirmed.

VICTOR C. HOWARD, Judge, and CYNTHIA L. MARTIN, Judge, concur.