

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED109890 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| vs. | ) | 20JE-CR02165-01 |
| | ) | |
| KEYSHAWN OMARI BURTON, | ) | Honorable Joseph A. Rathert |
| | ) | |
| Defendant/Appellant. | ) | FILED: August 16, 2022 |

Before Angela T. Quigless, P.J., Sherri B. Sullivan, J., and Robert M. Clayton III, J.

## Introduction

Keyshawn Omari Burton (Appellant) appeals from the Judgment upon his convictions following a jury trial for two counts of misdemeanor assault in the fourth degree, in violation of Section 565.056, RSMo 2000[1]; misdemeanor resisting arrest, in violation of Section 575.150; and felony stealing, in violation of Section 570.030. Appellant received 110-day sentences for each of the misdemeanor counts and received a four-year sentence for the felony stealing count, suspended execution of that sentence, and was placed on probation for a term of five years. We affirm.

---

[1] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

<u>Factual and Procedural Background</u>

Appellant does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial:

At approximately 4:00 a.m. on November 13, 2019, law enforcement officers with the Jefferson County Sherriff's Office received a call that several people in a white car were breaking into cars. One officer saw two people running from two separate driveways getting into a white car, which "accelerated very quickly," and then drove straight toward the officer's patrol car. Startled, the officer hit the brakes, and the white car passed within a few inches of hitting his patrol car. The white car did not have its lights on, indicating that it was trying to travel unnoticed. The officer then turned on his emergency lights, but by the time he turned his car around, the white car got away.

Meanwhile, another officer went to a nearby area to deploy spike strips in order to stop the white car. But before he could deploy them, he saw the car veer off the road and drive toward him, forcing him to jump out of the way. The incident was witnessed by an officer in another patrol car, who then followed the white car until it hit spike strips deployed by other officers, causing the car to slow down and eventually stop.

Appellant and the other individuals ran from the car into the woods. Police searched the area for several hours looking for them. Meanwhile, another officer approached the abandoned white car and saw a handgun on the driver's seat, which he seized. It was later confirmed the gun had been stolen the same day from an unlocked car of a nearby resident. The gun was also seen in a Facebook video.

Following the hours-long search, officers eventually found and arrested four suspects who ran away from the white car, one of whom was Appellant. Detective Shawn Cope (Detective Cope) arrested Appellant, placed him inside his patrol vehicle, and because Appellant

was sixteen years old at the time, Detective Cope immediately contacted the juvenile office for instructions. Deputy Juvenile Officer Elizabeth Weiss (Juvenile Officer Weiss) responded to the call and told Detective Cope to take Appellant to the Jefferson County Sheriff's Office headquarters and await her arrival, which Detective Cope promptly did. Upon her arrival, Juvenile Officer Weiss and Detective Cope entered the interview room. Juvenile Officer Weiss read Appellant his statement of rights, and Appellant acknowledged he understood those rights. After Appellant signed the waiver form, Detective Cope interviewed Appellant in the presence of Appellant's mother and Juvenile Officer Weiss. A redacted video of the interview was admitted at trial. In the video, Appellant admitted to stealing a gun from one of the victims' cars and also admitted he was driving the white car when it ran over the spike strips.

Thereafter, Appellant was certified as an adult and charged with first-degree assault and armed criminal action for driving a vehicle at a police officer's patrol car; first-degree assault and armed criminal action for swerving a vehicle at another officer; felony resisting arrest for fleeing from an officer who was arresting him for first-degree assault; and felony stealing for appropriating a firearm, all occurring on or about November 13, 2019. Appellant entered pleas of not guilty to all counts and filed a motion to suppress his statements made during the police interrogation. In his motion, Appellant argued the interrogation violated his rights under Section 211.061 because it happened before he was delivered to juvenile authorities. After a hearing, the trial court denied Appellant's motion. The trial court found, *inter alia*, that the requirements of Sections 211.059 and 211.061 were not violated and that "Defendant knowingly and intelligently

waived his rights and elected to give a statement." The trial court further found that Appellant being "tired" does not "negate the statement being made, as a violation of his rights."[2]

Following a jury trial, Appellant was found guilty of the lesser-included offenses of fourth-degree assault for each of the assault charges; not guilty of each of the armed criminal action charges; guilty of misdemeanor resisting arrest; and guilty of stealing as charged. Appellant received 110-day sentences for each of the misdemeanor counts and a four-year sentence for the felony stealing count, the execution of which was suspended, and he was placed on probation for five years. This appeal follows.[3]

## Standard of Review

This Court will affirm the trial court's ruling on a motion to suppress unless it is clearly erroneous. State v. Lanos, 14 S.W.3d 90, 93 (Mo. App. E.D. 1999). If the ruling is plausible in light of the record viewed in its entirety, we will not reverse, even if we would have weighed the evidence differently. State v. Norman, 431 S.W.3d 563, 568 (Mo. App. E.D. 2014). We view the facts in the light most favorable to the trial court's ruling and disregard contrary evidence and inferences. Lanos, 14 S.W.3d at 93. We give deference to the trial court in judging the credibility of the witnesses. Id. In addition, "[w]e will consider all evidence presented at trial as well as evidence presented at a pre-trial hearing on a motion to suppress." Norman, 431 S.W.3d at 568.

## Section 211.061

In his sole point on appeal, Appellant argues the trial court clearly erred in overruling his motion to suppress, in which he argued that law enforcement failed to take him "immediately

---

[2] At trial, Appellant objected during the prosecutor's opening statement when she began to discuss the interview. The objection was overruled, and Appellant was granted a continuing objection. Appellant included this issue in his motion for new trial.

[3] Additional facts relevant to Appellant's point on appeal will be set forth, as needed, in the discussion section below.

and directly" before the juvenile court or deliver him "to the juvenile officer or person acting for the juvenile as required by Section 211.061." Specifically, Appellant argues that law enforcement failed to strictly comply with the statute by not delivering him to juvenile authorities before interrogating him, thereby violating his rights under Section 211.061. Appellant further complains that Section 211.061 was violated because he was not physically transported to Juvenile Officer Weiss. We disagree.

In State v. Wade, 531 S.W.2d 726, 728-29 (Mo. banc 1976), the Missouri Supreme Court reiterated the holding that failure to strictly and literally comply with Section 211.061 constitutes reversible error. The court stated, "The Juvenile Code intends that no statement shall be made to police by a person [younger than] seventeen years of age before the child is taken to juvenile authorities. To hold the statement admissible here would permit the State to obtain and use what the Code refuses." Id. at 729. Acknowledging the incapacities of juveniles, the court determined that the Juvenile Code:

> recognizes the incapacities of persons [younger than] seventeen years of age, and intends that a child shall be provided with the assistance of a juvenile officer or other juvenile court personnel before he is subjected to the rigors of police interrogation. We doubt the capacity of an offender [younger than] seventeen years of age to legally effect a waiver of any kind in the absence of such a person.

Id. at 728-29. Section 211.061 states in relevant part:

1. When a child is taken into custody with or without warrant for an offense, the child, together with any information concerning the child and the personal property found in the child's possession, shall be taken immediately and directly before the juvenile court *or delivered to the juvenile officer or person acting for him.* [Emphasis added.]

Section 211.061.1. Rule 110.04 states that a "'juvenile officer' includes a deputy juvenile officer and other court personnel authorized to exercise the powers of the juvenile officer." Rule 110.04(15).

5

Here, at the suppression hearing, Detective Cope testified that after Appellant was spotted in the back seat of a car stopped at a gas station, he placed Appellant in his patrol vehicle. Detective Cope testified that because Appellant was sixteen years old at the time, he immediately contacted the Juvenile Office before conducting an interview or transporting Appellant anywhere. Juvenile Officer Weiss, who responded to the call, testified she was familiar with the Missouri Deputy Juvenile Officer Standards that help protect a juvenile's rights once in police custody. She also explained that when a juvenile is taken into custody, it is customary that the juvenile be brought to the juvenile detention center, or taken to the police department for questioning, or brought to the Juvenile Office. Juvenile Officer Weiss testified that among her duties were to determine if a juvenile needed to be detained and if a police interview needed to be conducted. She testified that before a police interview could be conducted, a parent had to be present and the juvenile officer was required to ensure the juvenile understood his rights during a criminal investigation. Juvenile Officer Weiss testified she and her supervisors determined that police could interview Appellant. She further testified the decision for Appellant to be taken to the Sheriff's Office and for her to meet Appellant there, rather than Appellant being brought to the Juvenile Office, was made by one of her supervisors.

In accordance with the Juvenile Office's directives, Detective Cope took Appellant to the Jefferson County Sheriff's Office Headquarters. Appellant was taken to an interview room, where law enforcement waited for a juvenile officer and Appellant's mother to arrive. Appellant was not interrogated before Juvenile Officer Weiss arrived or before his mother arrived and was present during the interview. Additionally, before Appellant was interviewed, Juvenile Officer Weiss read the waiver-of-rights form aloud to Appellant, one line at a time. She also told Appellant that she could explain further if he wanted her to. Juvenile Officer Weiss asked

6

Appellant to verbalize his understanding after each line. Appellant initialed each line of the form and also signed the waiver form, as did his mother.

After Appellant signed the waiver form, Juvenile Officer Weiss remained during the entire interview to help protect Appellant's rights and advise him of those rights. After the interview, Juvenile Officer Weiss analyzed the factors used to determine whether a juvenile should be detained, and thereafter authorized the detention of Appellant and ultimately the transfer of Appellant to the Juvenile Detention Center.

Here, contrary to Appellant's contentions, Section 211.061 does not prescribe an exact method for delivery of the juvenile to the juvenile officer or require the juvenile be delivered to the juvenile officer at the Juvenile Office or elsewhere. Therefore, Appellant's reliance on State v. Arbeiter, 408 S.W.2d 26 (Mo. 1966) to argue that law enforcement was required to take Appellant "immediately and directly" to juvenile court or to the juvenile officer is misplaced.

In Arbeiter, a fifteen-year-old boy was taken into custody and questioned by police before being taken to the juvenile authorities pursuant to Section 211.061. The officers in Arbeiter knew the defendant was fifteen but felt it was not necessary to comply with Section 211.061. This Court reversed the conviction on the grounds that the statements given before the defendant was taken to the Juvenile Center were inadmissible. Arbeiter, 408 S.W.2d at 27, 29. The arrangement made by Juvenile Officer Weiss is distinguishable from the conduct of the officers in Arbeiter and does not violate Section 211.061.

While Section 211.061 does state the juvenile should be taken "immediately" to the juvenile court or juvenile officer, Missouri cases have interpreted the statute such that compliance that is not "unreasonable" will satisfy the statute's requirements.

For example, in State v. Sinderson, 455 S.W.2d 486 (Mo. 1970), the juvenile was not picked up or arrested by police, but was brought directly to the police station by his mother and

7

uncle "pursuant to arrangements made by the uncle with the juvenile officer." Sinderson, 455 S.W.2d at 491. The subsequent interrogation was arranged by the juvenile officer after he arrived at the police station and "there was no attempt to interrogate the defendant until [the juvenile officer] was called and had come to the station himself." Id. The juvenile officer was present during the interrogation. Id. The Missouri Supreme Court held that the arrangement, made "by the juvenile officer," did not violate Section 211.061. Id.

Similarly, in In re A.G.R., 359 S.W.3d 103 (Mo. App. W.D. 2011), the sixteen-year-old juvenile was at his uncle's home when a family member observed him sexually abusing his two-year-old niece. In re A.G.R., 359 S.W.3d at 105-06. The family member told the juvenile to leave the house and called police to report the abuse. Id. at 106. A police officer stopped the juvenile nearby and waited for other officers to arrive. Id. He then transported the juvenile to the uncle's house, where the juvenile's mother was located. Id. at 106, 112. The officer explained to the juvenile's mother that he was going to take the juvenile to the police station and then to juvenile detention. Id. On appeal, the juvenile argued that police violated Section 211.061 because the officer who took the juvenile into custody delayed in taking him before juvenile court. Id. at 112. The court rejected this argument, holding that taking the juvenile to the uncle's house, where his mother was located, "did not involve a lengthy interval of time or a substantial deviation in the officer's proceeding to juvenile court as to be unreasonable." Id. at 112-13. While the court did not explicitly mention the officer's plan to bring the juvenile to the police station before taking him to the juvenile court, the court did not find the officer's conduct under the circumstances violated Section 211.061. Id. at 113.

Just as in Sinderson and A.G.R., in the instant case, it was not unreasonable for law enforcement to follow Juvenile Officer Weiss's instructions to take Appellant to the Sheriff's Office and await her arrival.

In light of the entire record, and viewing all evidence presented at trial as well as the evidence presented at the suppression hearing, law enforcement "delivered" Appellant to a juvenile officer. Before interviewing him, law enforcement immediately consulted with the juvenile officer and then followed her instructions to take Appellant to the Jefferson County Sheriff's Office and await the juvenile officer's arrival. Additionally, Appellant was provided with the assistance of a juvenile officer before being interviewed to help protect Appellant's rights and advise him of those rights. The juvenile officer ensured Appellant's rights were protected by having Appellant's mother present during the interview and remaining present herself during the entire interview. Moreover, the juvenile officer ensured Appellant's understanding of his rights by having him verbalize his understanding after she read each line, and by having him initial each line of the form as well as sign the waiver form. Based on the foregoing, the trial court did not clearly err in finding the requirements of Section 211.061 were satisfied and in denying Appellant's motion to suppress statements made to police. Point denied.

## Conclusion

The Judgment is affirmed.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, J.

Angela T. Quigless, P.J., and
Robert M. Clayton III, J., concur.